IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No. 1:25-cr-143-AJT |
| MOHAMMAD SHARIFULLAH, | ) | |
| also known as "JAFAR," | ) | |
| | ) | |
| Defendant. | | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
SHARIFULLAH'S RULE 29 MOTION BASED ON PROXIMATE CAUSE**

The Court should reject Sharifullah's belated Rule 29 motion based on proximate cause, ECF No. 233, for three reasons.  First, while Sharifullah requested a proximate cause jury instruction, he neither moved for judgment of acquittal based on proximate cause nor timely renewed that argument after trial—barring review or, at most, permitting plain-error review. Second, *United States v. Covington*, 2026 WL 1902549 (4th Cir. July 2, 2026), does not undercut this Court's ruling that § 2339B requires only but-for causation, much less render this Court's ruling plainly erroneous.  *Covington* expressly cabined its holding to the civil rights statute at issue and declined to decide whether the no-proximate-cause decisions interpreting § 841(b), on which this Court relied, extend to other statutes.  Third, and most fundamentally, the trial evidence made clear Sharifullah reasonably foresaw that death could result from his scouting of the route to Abbey Gate, and the conspiracy more broadly, because he had scouted numerous prior attack routes.[1]

---

[1] Several circuits have barred sufficiency challenges or held that they must be assessed against the jury instructions when an alleged "'error is due to an intervening change in the law.'"  *See United States v. Aiello*, 118 F.4th 291, 301 (2d Cir. 2024) (citing cases).  *Covington* "assume[d] without deciding that" courts should resolve sufficiency claims asserting an *omitted* element by looking to an offense's "true 'elements.'"  2026 WL 1902549, at *3 & n.1.  Because Sharifullah's new Rule 29 argument fails for multiple other reasons, this Court can do the same here.

**ARGUMENT**

**I.    Sharifullah failed to timely raise his Rule 29 challenge based on proximate cause, barring review by this Court.**

"When a defendant raises specific grounds in a Rule 29 motion," he forfeits all other "grounds that are not specifically raised." *See United States v. Chong Lam*, 677 F.3d 190, 200 (4th Cir. 2012). The same holds true when a defendant "fail[s] to renew" a specific ground "after trial." *See United States v. Fall*, 955 F.3d 363, 374 (4th Cir. 2020). So, too, when a Rule 29 argument is not "timely" made. *See United States v. Everett*, 91 F.4th 698, 711 (4th Cir. 2024). On *appeal*, the Fourth Circuit reviews forfeited Rule 29 arguments to determine if a "'manifest miscarriage of justice' has occurred," *United States v. Miller*, 41 F.4th 302, 315 & n.12 (4th Cir. 2022), which is "'simply a formulation of the plain-error test's application to insufficiency claims,'" *United States v. Thompson*, 2025 WL 2945678, at *1 (4th Cir. Oct. 17, 2025) (per curiam) (quoting *United States v. Delgado*, 672 F.3d 320, 331 n.9 (5th Cir. 2012) (en banc)); *Everett*, 91 F.4th at 711. To establish plain error, a defendant must show (1) an error (2) that is obvious or clear (3) that affected the outcome of the case and (4) that affected the fairness, integrity, or public reputation of the proceedings. *United States v. Covington*, 65 F.4th 726, 730-31 (4th Cir. 2023).

District courts, by contrast, "have no power to enter a judgment of acquittal" based on a "late"-filed Rule 29 motion or argument. *See United States v. Watkins*, 111 F.4th 300, 308 n.8 (4th Cir. 2024) (citing *Carlisle v. United States*, 517 U.S. 416, 421 (1996)); *e.g.*, U*nited States v. Okun*, 2015 WL 1402142, at *1 (E.D. Va. Mar. 25, 2015) ("Okun's Rule 29 Motion is untimely filed and will be denied."), *aff'd*, 610 F. App'x 272 (4th Cir. 2015) (per curiam). Nor can a defendant escape that limitation by characterizing "untimely" contentions as "supplemental," *see, e.g.*, *United States v. Berry*, 583 F. Supp. 2d 749, 757 (E.D. Va. 2008), or "'renewed,'" *see, e.g.*,

2

*United States v. Mulderig*, 120 F.3d 534, 543-45 (5th Cir. 1997).  In sum: forfeited, untimely Rule 29 arguments are not reviewable *at all* in this Court and, at most, are reviewable for plain error.

Here, Sharifullah did not move at the close of the government's evidence for judgment of acquittal based on proximate cause.  *See* ECF No. 213 (moving based on "actual cause," "corroboration," and "multiple conspiracies").  Nor did he renew his Rule 29 motion on that basis after the jury verdict.  *See* ECF No. 221 (partially renewing motion based on "actual cause" and "corroborat[ion]"); ECF No. 224 (same).  The "14 days after a guilty verdict" within which Sharifullah could have renewed his motion for judgment of acquittal have long since expired.  *See* Fed. R. Crim. P. 29(c)(1).  Hence, by failing to raise the proximate cause ground in his initial motion or any of his renewed motions, Sharifullah failed to preserve the argument for this Court's review.  *See, e.g.*, *Berry*, 583 F. Supp. 2d at 757.

Sharifullah, to be sure, requested a proximate cause jury instruction.  *See* ECF No. 115. But the preservation of an instructional challenge does not mean he preserved a sufficiency challenge.  *See, e.g.*, *United States v. Schene*, 543 F.3d 627, 636 n.4 (10th Cir. 2008) ("An argument during a jury instruction conference does not preserve a sufficiency-of-the-evidence issue for appeal where a defendant omits it from his Rule 29 motion."); *cf. United States v. Fuertes*, 805 F.3d 485, 497 (4th Cir. 2015) (holding that a Rule 29 motion does not preserve "legal challenge to [a] jury instruction").  *Covington*, indeed, only underscores Sharifullah's failure to preserve the sufficiency argument.  There, in addition to challenging the jury instructions, Covington expressly moved for judgment of acquittal based on "proximate cause."  *See United States v. Covington*, No. 3:23-cr-68 (E.D. Va. Mar. 3, 2025), ECF No. 337 at 169 (oral motion); *id.*, ECF No. 346 at 6,

14-18 (renewed written motion).  Sharifullah's failure to do so here bars review by this Court and, at most, permits review for plain error.[2]

## II.    *Covington* does not undercut, much less render plainly erroneous, this Court's ruling that § 2339B requires only but-for causation.

Section 2339B provides for an enhanced penalty "if the death of any person results" from a material support offense.  18 U.S.C. § 2339B(a)(1).  This Court held that § 2339B's death-results enhancement requires only but-for causation by analogy to the unanimous caselaw holding that the "'death resulting'" enhancement in 21 U.S.C. § 841(b) does not require proof of proximate causation.  *See United States v. Sharifullah*, 2026 WL 1049214, at *2-3 (E.D. Va. Apr. 19, 2026).  Subsequently, in *United States v. Covington*, the Fourth Circuit held that the "'bodily injury results'" enhancement in the deprivation-of-civil-rights statute, 18 U.S.C. § 242, requires proximate cause.  2026 WL 1902549, at *3-6.  While *Covington* noted the general presumption of proximate cause and mused "that Section 841(b)'s lack of a proximate-cause requirement *may* be the exception rather than the rule," it expressly limited its holding to the "Reconstruction-era civil rights statute" at issue and declined to "decide" how "the logic of our Section 841(b) no-proximate-cause decisions extends to other statutes."  *See id.* (emphasis added).  *Covington* is therefore fully

---

[2] Sharifullah has not moved for an extension of time under Federal Rule of Criminal Procedure 45(b)(1)(B) based on "good cause" and "excusable neglect," thereby depriving the government of an opportunity to respond and forfeiting any such request.  *See, e.g.*, *United States v. Garcia*, 2009 WL 2366545, at *1 (N.D.W. Va. July 29, 2009) ("Garcia has not attempted to show excusable neglect for the delay in filing her motions. Consequently, the Court concludes that Garcia's motions for judgment of acquittal and for a new trial were untimely filed, and therefore DENIES them.").  Nor, in any event, could he show good cause and excusable neglect, as he was clearly aware of the proximate cause argument, *see* ECF No. 115, and simply chose not to raise it as a ground for judgment of acquittal, *see, e.g.*, *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 219 (4th Cir. 2001) (no excusable neglect where party was "concededly aware" of lawsuit yet failed to respond).

consistent with this Court's proximate cause ruling and, at the least, does not show this Court's ruling was plainly erroneous.

Beyond the express narrowness of the ruling, the two primary rationales on which *Covington* relied (precedent on a related statute and the lack of a simultaneously enacted statute with express proximate cause language) have no applicability to § 2339B. Specifically, *Covington* invoked decades-old cases interpreting § 242, and its sister provision § 241, to require proximate cause. *See* 2026 WL 1902549, at *4 (citing *United States v. Harris*, 701 F.2d 1095, 1101 (4th Cir. 1983); *United States v. Hayes*, 589 F.2d 811, 820 (5th Cir. 1979); *United States v. Guillette*, 547 F.2d 743, 749-50 (2d Cir. 1976); *United States v. Marler*, 756 F.2d 206, 215-16 (1st Cir. 1985)). In *Harris*, the Fourth Circuit accepted the parties' agreement that § 241, the civil-rights conspiracy statute, requires proximate cause. 701 F.2d at 1101. *Covington* explained that it would be "passing strange to read" § 241 and § 242's "identical 'results from' language differently" because both "trace their lineage to the same Reconstruction-era statute, and Congress first added 'results' language to both provisions in the Civil Rights Act of 1968." 2026 WL 1902549, at *4. The Fourth Circuit also believed that failing to require proximate cause for § 242 would create a circuit split with the other circuits that had suggested, prior to *Burrage v. United States*, 571 U.S. 204 (2014), that § 242 requires proximate cause. *See Covington*, 2026 WL 1902549, at *4.

*Covington* also downplayed the inference from the lack of explicit foreseeability language in § 242 for three reasons: First, the "express foreseeability or proximate-cause language courts have identified appears in statutes that criminalize far different conduct than Section 242," such as "provisions dealing with explosive devices, *terrorism*, criminal restitution, and aircraft-related fraud." 2026 WL 1902549, at *5 (emphasis added). Second, "Congress added express proximate-cause language to those other statutes decades after it first inserted 'results' language into Section

5

242," *i.e.*, in the 1980s through the 2000s, rather than 1968. *Id.* at \*5 & n.2. Third, the sole criminal civil rights statute to use proximate cause language, 18 U.S.C. § 247(d), "does not share a common statutory ancestor with Section 242." *Id.* at \*6. More "importantly," the statute's "'proximate result' language" modifies the "category of victims whose harm can trigger the enhanced penalty provision"—"public safety officers 'performing duties as a direct or proximate result of' the defendant's unlawful conduct"—rather than the "offense's causation element." *Id.*

None of that reasoning applies to § 2339B. *Covington*'s concerns with departing from precedent or creating a circuit split have no purchase here, because no case anywhere interprets § 2339B or a related statute to require proximate cause. *See* 2026 WL 1902549, at \*4. As for *Covington*'s second rationale, the reasons it gave for discounting the inference from the lack of explicit foreseeability language there only show why the inference has force here. "[T]errorism" is one of the types of "conduct" where *Covington* recognized Congress has included "express foreseeability" language. *See id.* at \*5. For instance, 18 U.S.C. § 3286(b) eliminates the statute of limitations for terrorism offenses, including § 2339B, "if the commission of such offense resulted in, or created a for[e]seeable risk of, death or serious bodily injury to another person." Critically, Congress added the express foreseeability language to § 3286(b) in the section of the Patriot Act immediately prior to the addition of the death-results enhancement (without express foreseeability language) to § 2339B. *See* USA PATRIOT ACT of 2001, Pub. L. No. 107-56 §§ 809(a), 810(d), 115 Stat. 272, 379-80. And unlike § 247(d), § 3286(b)'s foreseeability language modifies the offense conduct, not a category of victims. *See Covington*, 2026 WL 1902549, at \*6.

Nor is § 3286(b) the only place where the Patriot Act employed express proximate cause or foreseeability language related to terrorism. *See* Patriot Act § 611(a) (authorizing payments to those killed or disabled "as a direct and proximate result of a personal injury sustained in the line

of duty" related to a "terrorist attack"); *id.* § 612 (amendment to similar provision); *id.* § 812 (providing life maximum term of supervised release for terrorism offenses, including § 2339B, "the commission of which resulted in, or created a foreseeable risk of, death or serious bodily injury"). Under *Covington*'s reasoning, the comparative lack of proximate cause or foreseeability language in § 2339B supports that the statute does not require proximate cause. 2026 WL 1902549, at *5-6. Moreover, the Patriot Act added the death-results enhancement to § 2339B in a title "STRENGTHENING THE CRIMINAL LAWS AGAINST TERRORISM" and a section adding death-results enhancements to other offenses like sabotaging nuclear facilities, destroying national defense materials, and damaging gas pipelines. Patriot Act § 810. It would be "passing strange," *Covington*, 2026 WL 1902549, at *4, for Congress to implicitly impose a foreseeability requirement for such patently dangerous "TERRORISM OFFENSES," Patriot Act § 810.

A recent Second Circuit decision, *United States v. Parks*, 2026 WL 1782013 (2d Cir. June 24, 2026), confirms that § 2339B is distinguishable from the civil rights statute at issue in *Covington*. There, the Second Circuit held that the death-results provision in the kidnapping statute, 18 U.S.C. § 1201(a)(1), does not require proximate cause. *Id.* at *4-6. The court declined to infer a proximate cause requirement because (1) the statute uses the term "'results'" (as opposed to causes), (2) Congress did not include "explicit" foreseeability language, and (3) kidnapping is "inherently dangerous," despite the statute encompassing mere "'psychological force.'" *Id.* at *5.

*Parks* also distinguished a prior Second Circuit decision stating that § 241 requires proximate cause, *Guillette*, 547 F.2d at 749, explaining that it did "not inject a foreseeability element into every crime with a 'death results' enhancement." 2026 WL 1782013, at *5-6. *Parks* further explained that, while "a defendant generally may not be convicted" absent proof of "proximate cause," courts "read into the statute only that mens rea which is necessary to separate

7

wrongful conduct from otherwise innocent conduct." *Id.* at *6 (internal quotation marks omitted). As to the kidnapping statute, its "'willful'" *mens rea* "'fully satisfie[s]' 'the concerns underlying the presumption in favor of scienter'" without inferring a proximate cause requirement. *Id.  Parks* thus makes clear that death-results enhancements in modern statutes targeting dangerous conduct do not require proximate cause.  And each of the factors leading *Parks* to conclude § 1201 does not require proximate cause applies to § 2339B:  It uses "results" rather than causes, contains no express foreseeability language, is inherently dangerous, and carries a "knowingly" *mens rea*.  *See* 18 U.S.C. § 2339B(a)(1).

Pushing back, Sharifullah largely repeats the arguments this Court already rejected.  *See* ECF No. 233 at 5-10.  His core contention seems to be that providing material support to terrorists simply is "not" that "dangerous," distinguishing it from the drug, healthcare fraud, kidnapping, hostage-taking, carjacking, and cyberstalking cases where courts have found no proximate cause requirement.  *See id.*  Congress, the Supreme Court, and this Court, however, have expressly rejected Sharifullah's blithe assurance that most material support "may not be" dangerous.  *Id.* at 9.  Congress required a finding that an organization "threatens the security of United States nationals or the national security of the United States" for designation, and predicated § 2339B on its conclusion that designated entities "are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct."  *See* 8 U.S.C. § 1189(a)(1)(C); note following 18 U.S.C. § 2339B (findings and purpose).  The Supreme Court, in turn, held that even seemingly innocuous material support poses sufficiently "real dangers" to survive strict First Amendment scrutiny.  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 38 (2010).  This Court too recognized that "it is difficult to conclude that death or serious bodily injury is not a foreseeable result of the conduct criminalized in Section 2339B, *i.e.*, providing material support for terrorism."

8

*Sharifullah*, 2026 WL 1049214, at *3.  Sharifullah does not even pretend that anything in *Covington* undermines that commonsense conclusion.

Finally, Sharifullah invokes an Eleventh Circuit dissent rejecting the unanimous conclusion of the courts of appeals that the death-results enhancement in 21 U.S.C. § 841(b) requires only but-for causation.  *See* ECF No. 233 at 6 n.3 & 10 (citing *United States v. Lebarron*, 178 F.4th 646, 663-78 (11th Cir. 2026) (Tjoflat, J., dissenting)).  Sharifullah's reliance on that outlier position, directly contrary to Fourth Circuit precedent, *see, e.g.*, *United States v. Alvarado*, 816 F.3d 242, 249 (4th Cir. 2016), only confirms that his position cuts against, rather than flows from, binding caselaw.  Sharifullah thus fails to demonstrate that this Court's proximate cause ruling represented error, let alone plain error.

**III.    In all events, the trial evidence makes clear death was reasonably foreseeable to Sharifullah.**

Even were this Court's ruling plainly erroneous, any proximate cause requirement is satisfied by evidence death was "reasonably foreseeable" to Sharifullah.  *See Covington*, 2026 WL 1902549, at *9; ECF No. 233 at 10-11 ("Proximate cause . . . turns on 'foreseeability'").  In the sufficiency context, showing plain error requires the defendant to demonstrate that "'the record is devoid of evidence pointing to guilt, or the evidence on a key element of the offense is so tenuous that a conviction would be shocking.'"  *United States v. McMillan*, 2026 WL 867757, at *2 (4th Cir. Mar. 30, 2026) (per curiam) (quoting *United States v. Rao*, 123 F.4th 270, 276 (5th Cir. 2024)); *United States v. Brown*, 2026 WL 92937, at *1 (4th Cir. Jan. 13, 2026) (per curiam) (same).  Sharifullah falls far short of making that showing because the trial record contains ample evidence he could reasonably foresee both that his specific scouting, and the conspiracy more broadly, could result in death.  As the government explained—and Sharifullah does not contest, *see* ECF No. 228

9

at 15-16—causation stemming from *either* his conduct or the conspiracy as a whole suffices to satisfy the death-results element. *See* ECF No. 227 at 8-14.

The trial record contains abundant evidence of foreseeability: Sharifullah swore allegiance to ISIS-K in 2016 after watching "videos" of the group waging "war" and claiming "territor[y]." *See, e.g.*, Ex. 20-12T at 14. He did so to "catch the crusaders and kill them" and to strike at the "Buddhists" oppressing Muslims in "Burma." *See, e.g.*, Ex. 11-1T at 6-8, 10; Ex. 20-47T at 4. Sharifullah immediately acted on those violent motives by scouting the route and transporting the bomber for the attack on the Nepali embassy guards. *See, e.g.*, Ex. 20-18T at 3-11; Ex. 20-47T at 1-5; Ex. 20-53T at 4-5. Over the following years, he participated in many more lethal attacks, including scouting the route for an attack on the Iraqi Embassy. *See, e.g.*, Ex. 20-23T at 9. In 2019, civilians captured him while filming an attack, leading to his imprisonment. *See* Ex. 20-40T at 9-15. Immediately after leaving Pul-e-Charkhi Prison in 2021, Sharifullah scouted the route for the Abbey Gate attack at the behest of ISIS-K leadership. *See, e.g.*, Ex. 20-26T at 1-5; Ex. 20-27T at 15-16; Ex. 20-28T at 1-17. Following the Abbey Gate attack, his star rose within ISIS-K and he began leading his own cell in still more lethal attacks. *See, e.g.*, Ex. 20-40T at 16-36; Ex. 20-41T at 1-12. All told, the assertion Sharifullah did not reasonably foresee that death could result from his scouting of the route to Abbey Gate specifically, or the conspiracy more broadly, verges on the ludicrous, perhaps explaining why he did not timely move for judgment of acquittal on this basis. At a minimum, he comes nowhere close to demonstrating that the evidence of foreseeability is "'so tenuous that a conviction would be shocking.'" *McMillan*, 2026 WL 867757, at *2.

Sharifullah purports that the "inferential chain" is too "attenuated" for proximate cause. ECF No. 233 at 11. But there is nothing attenuated or unforeseeable about death resulting from scouting an attack route, while knowing from long experience that the route is going to be used by

10

a suicide bomber.  Nor is there anything attenuated or unforeseeable about death resulting from supporting a murderous terrorist organization and helping it carry out prior lethal attacks.  One of Sharifullah's own cases, indeed, found proximate cause satisfied in a § 241 prosecution based on far more convoluted facts: the defendants conspired to prevent a witness from testifying at a trial, leading the witness to "accidentally detonate[] a bomb which he himself installed as a booby trap aimed at defendants and others who were searching for him."  *See Guillette*, 547 F.2d at 748-50. Accordingly, the fact that Sharifullah did not personally detonate the bomb that killed 13 American servicemembers and scores of Afghan civilians fails to insulate him from liability.

**CONCLUSION**

For the foregoing reasons, the Court should deny Sharifullah's Rule 29 motion.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

By: _____/s/_____

John T. Gibbs
Virginia Bar Number 40380
Avi Panth
Virginia Bar Number 92450
Reed Sawyers
D.C. Bar Number 90018498
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3982
John.Gibbs@usdoj.gov

John A. Eisenberg
Assistant Attorney General for National Security

Ryan D. White
D.C. Bar Number 1655918
Trial Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, D.C. 20530
Phone: (202) 514-0849
Fax: (202) 514-8714
Ryan.White@usdoj.gov