IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cr-143 |
| | ) | The Honorable Anthony J. Trenga |
| MOHAMMAD SHARIFULLAH, | ) | |
| | ) | |
| Defendant | ) | |

**MOHAMMAD SHARIFULLAH'S REPLY IN SUPPORT OF RULE 29 MOTION
REGARDING PROXIMATE CAUSATION**

The government opposes Mr. Sharifullah's supplement, ECF No. 233, on three grounds: (1) that he forfeited the proximate-cause argument by failing to include it in his timely-filed post-trial Rule 29 Motion; (2) that *United States v. Covington*, ___ F.4th ___, 2026 WL 1902549 (4th Cir. July 2, 2026), is confined to the civil-rights statute it construed and leaves this Court's pretrial ruling undisturbed; and (3) that the deaths at Abbey Gate were reasonably foreseeable in any event. ECF No. 234. Each argument fails. *Covington* did not announce a new or narrow rule. It applied the settled background principle that an enhancement triggered when a specified result "results from" an offense requires proof of proximate causation, and it identified the no-proximate cause rule applied in 21 U.S.C. § 841(b) cases as a narrow exception that the party invoking it must justify. This Court should apply *Convington*'s general background rule requiring proof of proximate causation to the pending Rule 29 motion. So applied, the evidence does not permit a rational finding that Mr. Sharifullah's charged conduct proximately caused the deaths at Abbey Gate, and the Court should enter a judgment of acquittal on the death-resulting element charged in Count 1.

I.      **The Defense Has Not Forfeited a Rule 29 Motion Based on Insufficiency as to the Lack of Evidence of Proximate Causation For A Death At Abbey Gate.**

The government's lead contention is that Mr. Sharifullah never moved for judgment of acquittal on proximate-cause grounds and so forfeited the argument, limiting the Court to plain-error review or barring review altogether. ECF No. 234 at 2-4; *but cf id.* at 1 n.1. The government is wrong for three independent reasons.

A.      **Mr. Sharifullah Has Not Forfeited a Sufficiency Challenge Based on the Absence of Evidence of Proximate Causation Because the Legal Requirement for Such Evidence Was Previously Raised and Considered by the Court.**

In general, raising specific arguments in a Rule 29 motion waives any unstated sufficiency arguments on appeal. *See United States v. Chong Lam*, 677 F.3d 190, 200 (4th Cir. 2012). But this rule has an exception—that the government's response completely ignores—for issues that are actually considered and addressed by the district court regardless of whether they are specifically included in the Rule 29 motion itself. *United States v. Duroseau*, 26 F.4th 674, 679-80 (4th Cir. 2022). "The point of error-preservation rules, including the requirement that a Rule 29 motion include all grounds supporting acquittal, is to give the district court the first opportunity to consider an issue and correct any errors." *Id.* at 678; *accord United States v. Russell*, 172 F.4th 434, 443 n.5 (4th Cir. 2026) (quoting *Duroseau*, 26 F.4th at 678, and stating that defendant preserved issue by giving "the district court sufficient notice about the heart of the argument"). Accordingly, even if a defendant fails to specifically include a particular argument in a Rule 29 motion, the issue remains preserved as long as "the issue was considered and addressed" by the district court. *Duroseau*, 26 F.4th at 679-80.

In *Duroseau*, the defendant was convicted of violating 18 U.S.C. § 922(a)(5), unlawful firearm transfer to an unlicensed person in another state. The defendant initially moved for a judgment of acquittal under Rule 29 on a single, specific statutory interpretation ground: that the

2

offense of conviction did not "apply to the transfer of firearms in foreign commerce." 26 F.4th at 678. He did not initially argue that the government's evidence failed to show an actual transfer *to* an unlicensed person as charged in the indictment. *Id.* For that reason, the government argued that a sufficiency challenge based on the absence of evidence that the defendant transferred firearms "to another person" was forfeited and "not properly before" the Court of Appeals. *Id.*

The Fourth Circuit rejected the government's forfeiture argument because the issue had been fully addressed during the trial even though it was not specifically included within the defendant's Rule 29 Motion. Specifically, during jury deliberations, the jury submitted a question asking whether a completed transfer or delivery was required under the statute. *Id.* at 679. The district court then extensively discussed that issue with the parties, provided additional instructions to the jury, and addressed the issue in denying the defendant's Rule 29 motion. *Id.* at 679-80. Accordingly, because "the question at the heart of [the] appeal … was brought up and thoroughly considered by the district court[,]" the Fourth Circuit held the issue was sufficiently preserved. *Id.* at 680.

*Duroseau*'s rationale is that the district court had "the first opportunity to consider [the] issue and correct any errors," and consequently the purpose of Rule 29's error-preservation rule does not depend on the procedural vehicle in which the error is presented. In this case, the identical legal question (whether the death-results element requires proximate cause) was squarely presented, briefed, and decided. Indeed, the Court addressed the defense's argument in a written memorandum opinion. ECF Nos. 115, 202; *United States v. Sharifullah*, ___ F. Supp.3d ___, 2026 WL 1049214, at *3 (E.D. Va. Apr. 19, 2026). This is far more extensive preservation of the issue than the mid-jury-deliberation colloquy that sufficed to preserve the relevant sufficiency issue in *Duroseau*. Because Mr. Sharifullah raised the issue of the legal requirement for evidence of

3

proximate cause, the Court has already had—and exercised—the first opportunity to consider the very issue the government now says it is foreclosed from considering in the context of the pending Rule 29 motion.

In sum, the purpose of the rule—to allow this Court to have an opportunity to consider issues in the first instance—was served by Mr. Sharifullah's motion for an advance ruling on a proximate cause requirement. Consequently, there is no forfeiture.

The government's authorities are not to the contrary: *Chong Lam* and *Everett* each concern a ground the defendant never presented to the district court at all—not, as here, a ground squarely litigated pretrial. *See* ECF No. 234 at 2 (citing *United States v. Chong Lam*, 677 F.3d 190, 200 (4th Cir. 2012) (declining to consider sufficiency argument not presented to district court in first instance); *United States v. Everett*, 91 F.4th 698, 711 (4th Cir. 2024) (considering sufficiency arguments on plain error because defense counsel failed to make timely Rule 29 motion). *Fall* involves a claim the defendant abandoned by failing to file a post-trial Rule 29. *United States v. Fall*, 955 F.3d 363, 374 (4th Cir. 2020) (declining to consider sufficiency argument where defendant failed to file 29(c) motion at all). None of these cases are analogous to this one.

### B. The Court Must Apply a Supervening Fourth Circuit Decision that is Material to a Pending Motion.

Mr. Sharifullah's Rule 29 motion was timely-filed and remains pending. The supplementary filing on proximate cause was submitted to advise the Court of intervening authority that bears on the legal standard defining the requisite proof required to establish causation for purposes of the death-resulting element charged in Count 1. Nonetheless, quoting dicta in *United States v. Watkins*, 111 F.4th 300, 308 n.8 (4th Cir. 2024), which cited *Carlisle v. United States*, 517 U.S. 416, 421 (1996), the government argues that district courts "'have no power to enter a judgment of acquittal' based on a 'late'-filed Rule 29 motion or argument." ECF No. 234

at 2. When *Carlisle* was issued, Federal Rule of Criminal Procedure 45(b) did not permit courts to "extend the time for taking any action under Rule[] 29," based on a late-filed motion. Fed. R. Crim. P. 45(b) (1996). Consequently, the Supreme Court observed in 1996 that the Federal Rules provided "no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal[.]" *Carlisle*, 517 U.S. at 421.

But Rules 29 and 45(b) were amended in 2005 such that "under Rule 45(b)(1)(B), if for some reason the defendant fails to file the underlying motion within the specified time, the court may nonetheless consider that untimely motion if the court determines that the failure to file it on time was the result of excusable neglect." Rule 29 advisory committee's note to 2005 amendment; *accord* Rule 45 advisory committee's note to 2005 amendment. Accordingly, the granting of a Rule 29 motion based upon a late-filed motion is not outside the "power" of district courts, and the government's claim that "untimely Rule 29 arguments are not reviewable *at all* in this Court" is based on text from a version of the Federal Rules that was eliminated in 2005. *Cf. Eberhart v. United States*, 546 U.S. 12, 18-20 (2005) (per curiam) (holding that Rule 29 and 33 time limits are non-jurisdictional claim-processing rules, not limits on a court's adjudicatory power).

Furthermore, the government twice cited to the district court opinion in *Covington* that was reversed on grounds that directly undermine the government's central argument: that cases construing 21 U.S.C. § 841's "death resulting" provision provide an applicable analogue to construction of § 2339B's death-resulting element. Regardless of the arguments initially raised in the Rule 29 motion, "[s]o long as the case is *sub judice*, a federal court must apply a new and supervening rule of federal law when applicable to the issues in the case." *Wasserman v. Mun. Ct. of Alhambra Jud. Dist.*, 543 F.2d 723, 725 (9th Cir. 1976); *accord Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d 162, 170 (3d Cir. 1982) (every court "ha[s] a duty to apply a supervening rule

5

of law despite its prior decisions to the contrary when the new legal rule is valid and applicable to the issues of the case" (citation omitted)). *Covington* is such a decision. Issued July 2, 2026—after post-trial briefing closed—it authoritatively construes materially identical "results from" language and bears directly on this Court's ruling that § 2339B requires only proof of but-for causation.

The Court's duty to apply intervening binding caselaw requires it to apply the correct legal standard to the pending Rule 29 motion—requiring proof of both actual and proximate causation—regardless of the instructions the jury received, just as the Fourth Circuit did in *Covington* itself, which measured sufficiency against the offense's "true 'elements' rather than 'how the jury was instructed.'" *Covington*, 2026 WL 1902549, at *3 (quoting *Musacchio v. United States*, 577 U.S. 237, 243 (2016)). The rule against considering grounds not raised in a Rule 29 motion does not obviate the Court's responsibility to apply a supervening Fourth Circuit decision with material bearing on its own rulings.

This is so for a further reason: *Covington* is not a "new" rule in any sense that implicates the concerns behind forfeiture. Proximate cause is a background presumption that "applies even when a statute does not 'expressly impose'" it, *id.* at *4 (quoting *Paroline v. United States*, 572 U.S. 434, 446 (2014)), and it long predates § 2339B's 2001 enactment. Applying it now works no unfairness; it simply holds the government to the standard the statute always carried.

### C.    The Government's Rule Would Require Futile Objections.

The government's contrary position would be perverse. Having obtained a definitive ruling that proximate cause is *not* required to establish the death-resulting element in § 2339B, according to the government, the defense would have had to move for judgment of acquittal on a proximate-cause theory the Court had already explicitly rejected merely to preserve it. The law does not demand empty gestures of that kind, which would waste the Court's and the parties' resources while serving none of the interests forfeiture doctrine protects. Nor does the law require the Court

6

to turn a blind eye once *Covington* altered the legal ground upon which the Court made its initial legal determination that evidence of proximate cause was not required to establish the death-resulting element.

Given that Mr. Sharifullah raised the precise legal question at issue which the Court fully considered and denied, application of the rule in *Musacchio v. United States*, 577 U.S. 237, 243 (2016)—that "a sufficiency challenge should be assessed against the elements of the charged crime" regardless of whether the jury instructions departed from those elements—would avoid not only the requirement that Mr. Sharifullah raise pointless arguments but also preserve the Court's obligation to revise its rulings based upon the issuance of binding and persuasive authority by the Court of Appeals. Accordingly, just as the Fourth Circuit "assume[d] without deciding that *Musacchio*'s rule extends to situations … when a district court allegedly omits a requirement rather than adding an incorrect one," *Covington*, 2026 WL 1902549, at *3 n.1, the government agrees "this Court can do the same here." ECF No. 234 at 1 n.1.

## II.    *Covington*'s Framework Controls, and the Government Has Not Shown That § 2339B Fits the Narrow § 841(b) Exception.

The government argues that *Covington* is limited to the "Reconstruction-era civil rights statute" it construed and "expressly … declined to decide" whether the § 841(b) no-proximate-cause rule extends elsewhere, so it leaves the Court's ruling on proximate causation unaffected. ECF No. 234 at 4-5. That misreads both what *Covington* held and what it reserved.

What *Covington* holds is a general rule, not a § 242-specific one. Drawing on *Burrage v. United States*, 571 U.S. 204 (2014), *Paroline*, 572 U.S. at 445, *Hewitt v. United States*, 606 U.S. 419, 431 (2025), *United States v. Harris*, 701 F.2d 1095 (4th Cir. 1983), and the Model Penal Code, the Fourth Circuit held that where an offense conditions liability on "a specified result of conduct," a defendant "generally may not be convicted unless his conduct is both (1) the actual

7

cause, and (2) … the 'proximate cause' of the result," and that this "general rule applies even when a statute does not 'expressly impose'" it. 2026 WL 1902549, at *4. That is a statement of background law governing "results from" statutes generally. *Id.*

What the panel "d[id] not decide" was whether the narrow § 841(b) "exception to the rule" reaches other statutes. *Id.* at *5. The government selectively quotes *Covington* and adds italics to present *Covington*'s description of the § 841(b) exception as tentative, claiming that it observed "that Section 841(b)'s lack of proximate-cause requirement *may* be the exception rather than the rule[.]" ECF No. 234 at 4 (quoting *Covington*, 2026 WL 1902549 at *5) (emphasis added in gov't quotation). Here's what the majority said (and the dissenting opinion does not disagree on this point):

> Like the Ninth Circuit, we understand "[s]entencing factors applicable to drug crimes" like Section 841(b)'s penalty provision to be an "exception to the rule that the [g]overnment prove proximate cause when the charging statute calls for a certain result." [*United States v.*] *Pineda-Doval*, 614 F.3d [1019,] 1028 [(9th Cir. 2010)]. "[T]he prevailing sense in the courts" is that these factors create "strict liability," and thus, in that context, "[i]t is by no means unusual to peg the sentence to factors that were not known—or even foreseeable—to the defendant at the time the crime was committed." *Id.* (quotation marks removed). But strict liability offenses, while "not unknown to the criminal law," are "generally disfavored," which further suggests that Section 841(b)'s lack of a proximate-cause requirement may be the exception rather than the rule. *United States v. United States Gypsum Co.*, 438 U.S. 422, 437–38 (1978). And even if the logic of our Section 841(b) no-proximate-cause decisions extends to other statutes not currently before us (a question we do not decide), the government does not explain how the Reconstruction-era civil rights statute we consider here is analogous to the Controlled Substances Act in any relevant sense.

*Covington*, 2026 WL 1902549, at *5. The Fourth Circuit stated that the "no-proximate-cause" rule defined by cases analyzing § 841(b) was an exception to the general rule requiring proof of proximate causation, that it was not deciding whether the rationale applied to such cases "extends to other statutes[;]" but if it does, such statutes must be "analogous to the Controlled Substances Act in [some] relevant sense." *Id.* The government's selective and italicized quotation of

*Covington*'s text—like its failure to mention the exception in *Duroseau*, 26 F.4th at 679-80, and its argument that district courts lack the "power" to rule on late-filed Rule 29 motions based on the text of an abrogated rule of criminal procedure—undermines the credibility of their arguments.

*Covington*'s actual reservation applied to § 841(b) cuts against the government, not for it. *Covington* placed the burden of justifying the exception on the party invoking it, faulting the government there because it "d[id] not explain how" § 242 "is analogous to the Controlled Substances Act in any relevant sense." *Id.* The same gap is fatal here. Material support—which encompasses money, lodging, transportation, communications equipment, and even funds used to buy medical supplies—bears no relevant resemblance to distributing a controlled substance whose very use is what kills. ECF No. 233 at 5–10. The government's opposition never bridges that gap; it asserts dangerousness by association with the organizations § 2339B targets, not any analogy between the proscribed *conduct* and drug distribution.

The government's principal new argument is that the USA PATRIOT Act added express "foreseeable risk of … death" language to 18 U.S.C. § 3286(b) and statutory sections near the § 2339B death-resulting enhancement, so the comparative silence in § 2339B implies no proximate-cause requirement. ECF No. 234 at 6–7. *Covington* forecloses that inference. First, the *expressio unius* rule the government invokes is, as *Covington* held, "far less helpful when analyzing 'different statutes,' even when those statutes have 'identical language,'" 2026 WL 1902549, at *5 (quoting *Yates v. United States*, 574 U.S. 528, 537 (2015))—and § 3286(b)'s "created a foreseeable risk of … death" and § 2339B's "if the death of any person results" do not even contain identical language.

Second, and as with § 247(d) in *Covington*, the operative language in the government's comparators "does not modify [the] offense's causation element." *Id.* at *6. Section 3286(b) is a

statute of limitations which is "not an element[,]" *Smith v. United States*, 568 U.S. 106, 112 (2013), even if it "modifies the offense conduct." ECF No. 234 at 6. Sections 611–612 authorize compensation payments to public-safety officers injured "as a direct and proximate result" of a terrorist attack—the very "category of *victims*" function *Covington* held sheds "little light" on a causation standard. *Covington,* 2026 WL 1902549, at *6.

18 U.S.C. § 3583(j), which defines "supervised release terms for terrorism predicates" and was added to the statute in 2001 by Section 812 of the USA Patriot Act, was amended five years later to remove the "resulted in" and "foreseeable risk" language that the government points to. The current text was enacted by the USA PATRIOT IMPROVEMENT AND REAUTHORIZATION ACT OF 2005, PL 109–177, § 212, March 9, 2006, 120 Stat 192, 230. The Court should decline to construe the meaning of § 2339B based upon text that was removed from the statute in 2006 and has no relation to § 2339B's death-resulting provision.

Furthermore, proximate cause asks whether an actual result was the foreseeable, within-scope, non-fortuitous consequence of the defendant's offense conduct. Section 3583(j) as defined by the USA Patriot Act did not require proof of proximate causation: it reached offenses that "resulted in, or created a foreseeable risk of, death'—essentially, anything that risked danger to another, whether or not any death occurred. Section 3583(j)'s excised language thus does not equate to a requirement of proof of proximate causation in the first place. Its absence from § 2339B therefore says nothing about whether § 2339B carries the ordinary proximate-cause requirement that attaches to a completed-result enhancement.

The government's reliance on the Second Circuit's decision in *United States v. Parks*, 179 F.4th 144 (2d Cir. 2026), fares no better. ECF No. 234 at 7–8. First, *Parks* does not bind this Court, and its reasoning cannot be reconciled with the Fourth Circuit's. Relying upon *United States v.*

*Felder*, 993 F.3d 57, 69–70 (2d Cir. 2021), *Parks* treated the absence of proximate cause as the general rule for "death results" enhancements, reasoning that "results from" "imposes a requirement of actual or but-for causation … and not proximate causation," and that Congress's use of the passive voice reflects a concern "with whether something happened—not how or why it happened." *Parks*, 179 F.4th at 151 (quoting *Felder*, 993 F.3d at 69). The Second Circuit's reasoning is contradicted by *Covington*, which held that these same textual features do not displace proximate cause and that proximate cause is the general rule that "applies even when a statute does not 'expressly impose'" it, with § 841(b) the narrow exception. *Covington*, 2026 WL 1902549, at *4–5. The Second and Fourth Circuits have thus adopted opposite background rules for "results from" statutes, and this Court is bound by *Covington*. To the extent *Parks* rests on the bare presence of "results" language and the passive voice—textual features § 2339B shares with § 242—it rests on precisely the argument the Fourth Circuit rejected.

Second, *Parks*' actual holding turns on a feature § 2339B lacks, so it confirms rather than undermines Mr. Sharifullah's position. *Parks* held that no separate foreseeability requirement was needed because kidnapping "is generally considered a violent crime" committed with "injurious intent," which makes a foreseeability instruction "redundant and even confusing." 179 F.4th at 152 (quoting *Felder*, 993 F.3d at 70). The court grounded that conclusion in the scienter principle that a court reads into a statute "only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct," *id.* at 153 (quoting *Elonis v. United States*, 575 U.S. 723, 736 (2015)), and reasoned that kidnapping's "willful intent … to confine the victim" independently satisfies the concern proximate cause would otherwise address. *Id.* (quoting *Elonis*, 575 U.S. at 737). Section 2339B is the opposite of kidnapping (and carjacking) because it requires no intent to harm anyone and no violent act; it is complete upon the knowing provision of support to a

11

designated organization, even support "meant to 'promot[e] peaceable, lawful conduct.'" *Humanitarian Law Project*, 561 U.S. at 30. Because a § 2339B defendant may be convicted without any injurious intent—indeed while intending that no one be harmed—the "redundancy" rationale applicable to kidnapping is absent here.

Finally, the government points to congressional findings, *Humanitarian Law Project*, and this Court's ruling denying the motion for an advance ruling on proximate cause for the proposition that material support is dangerous enough to dispense with proximate cause. ECF No. 234 at 8–9. Again, the government's argument conflates the dangerousness of terrorism with the dangerousness of material support—the very equation *Covington*'s exception analysis forecloses. That death may be caused somewhere in the aggregate operations of a violent organization does not prove that these deaths were the proximate result of this defendant's charged and convicted conduct.

### III.    The Government Did Not Prove That the Charged Conduct Proximately Caused the Deaths at Abbey Gate.

The record in this case does not permit a rational finding that Mr. Sharifullah's charged conduct proximately caused the deaths at Abbey Gate. Proximate cause is not merely general foreseeability or dangerousness. It "turns on 'foreseeability or the scope of the risk created by the predicate conduct'" and "preclude[s] liability … where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Covington*, 2026 WL 1902549, at *4 (quoting *Paroline*, 572 U.S. at 445). The inquiry is directed at the predicate conduct—here, the charged route-scouting and the conspiracy—and asks whether the deaths at Abbey Gate fell within the scope of the risk that conduct created, or whether independent, intervening acts broke the chain.

The government's foreseeability showing does not engage that inquiry. It recounts that Mr. Sharifullah swore allegiance to ISIS-K in 2016, scouted routes for and abetted earlier attacks, and rose within the organization. ECF No. 234 at 9–10. That evidence, even in the light most favorable to the government, speaks to his history and associations—to the proposition that he was a committed member of a violent organization from whose activities *some* death was foreseeable at *some* point. It does not establish that the specific deaths at Abbey Gate were the natural and foreseeable result, within the scope of the risk, of the charged scouting. Indeed, the government fails to establish that the deaths at Abbey Gate were proximately caused by the charged conduct because it has no evidence of how a suicide bomber reached the location where the bomb was detonated. Moreover, treating membership in and prior service to a dangerous organization as a substitute for proximate causation of a particular death is precisely the strict-liability-by-association theory the proximate-cause requirement exists to foreclose. *Covington* confined that mode of liability to the narrow § 841(b) exception.

On the government's own account, the deaths were inflicted by an independent actor—an attacker the government can identify only through ISIS-K propaganda as "Logari"—who, hours after the scouting and ostensibly at the separate "go-ahead" of unknown ISIS-K leadership, worked his way through a pedestrian crowd of thousands and detonated the bomb near Abbey Gate, a location almost a kilometer from and distinct from the vehicle route Mr. Sharifullah is said to have scouted. ECF Nos. 233 at 10-11; 227 at 9–12. No evidence established that the plot that successfully resulted in the bomb detonation was the *same* as the conspiracy in which Mr. Sharifullah purportedly agreed to participate.

Furthermore, each link in the government's speculative chain requires an independent human decision: leadership's decision to proceed, the bomber's decision to carry out the attack,

and the choices of others said to have facilitated passage to get through the massive crowd. A causal chain running through that many intervening volitional acts is the paradigm of the attenuated connection proximate cause cuts off. That the charged conduct may have been a but-for contribution does not make it the proximate cause.

The government's suggestion that causation may rest on "the conspiracy as a whole" rather than Mr. Sharifullah's individual acts does not cure the defect. ECF No. 234 at 9–10. Even accepting that framing *arguendo*, a conspiracy-wide theory still requires that the deaths fall within the scope of the risk created by the charged conspiracy's conduct and not result from independent intervening acts; and enlarging the unit of analysis from the scouting to the entire conspiracy only multiplies the intervening decisions between the charged conduct and the deaths. The breadth of a conspiracy cannot manufacture a proximate causal link that the specific conduct lacks.

The government citation to *United States v. Guillette*, 547 F.2d 743 (2d Cir. 1976), confirms the point. There, the § 241 conspirators were held to have proximately caused a death because the victim died detonating a booby trap he had set to defend against the very conspirators hunting him—a consequence flowing directly from the conspiracy's own predicate conduct. 547 F.2d at 748–50; *see* ECF No. 234 at 11. Nothing comparable occurred here: the deaths did not flow from the natural, defensive, or reactive consequences of Mr. Sharifullah's scouting, but from an independent third party's affirmative attack ordered by others. *Guillette* also confirms what the government resists elsewhere—that "results from" enhancements in these statutes require proof of proximate cause.

Finally, the jury's inability to reach a unanimous verdict on the death-resulting element— even under the erroneously lenient but-for instruction—confirms that the causation evidence does not permit, under the correct and more demanding standard, a rational finding of proximate cause

14

beyond a reasonable doubt. A record on which the jury could not agree that the charged conduct was sufficient even under the reduced but-for causation level of proof supports a judgment of acquittal based on the more onerous standard of proof that actually applies to § 2339B's death-resulting element. Accordingly, the Court should enter a judgment of acquittal on the death-resulting element in this case.

## CONCLUSION

For the foregoing reasons, and those stated previously, the Court should assess the pending Rule 29 motion against a death-resulting element that requires proof of proximate causation and, so measured, enter a judgment of acquittal on the death-resulting element of Count 1.

Respectfully submitted,
By Counsel,

_____/s/_____
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender

Lauren E. S. Rosen
Va Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org
Geremy_Kamens@fd.org

15